IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                        :        CASE NO. 12-03808
                                              :
ERNESTO ANTONIO MELENDEZ             :
PEREZ                                         :        CHAPTER 11
                                              :
        Debtor                                :
                                              :
_____       :

OPINION AND ORDER

This case is before the court upon Margarita Diaz Rivera's (hereinafter referred to as Mrs. Diaz or the "Creditor") motion to dismiss the case pursuant to 11 U.S.C. 1112(b)(4)(P), that is, for "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition," and the opposition thereto by Ernesto Antonio Melendez Perez (hereinafter referred to as the "Debtor" or "Mr. Melendez").  For the reasons set forth below the motion to dismiss this case is denied in part regarding the obligations to pay the $2,000 per month and the mortgage payments. The court will schedule an evidentiary hearing to determine whether or not the agreement to maintain a life insurance policy naming the Creditor as a beneficiary is a support obligation.

Facts and Procedural Background

Mr. Melendez filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on May 16, 2012. The Debtor included Margarita Diaz Rivera in Schedule F- Creditors Holding Unsecured NonPriority Claims- for an unliquidated and disputed unsecured claim regarding the conjugal partnership liquidation.  The 341 meeting of the creditors was initially scheduled for June 25, 2012 (Docket No. 9), and was rescheduled and held on October 5, 2012 (Docket Nos. 14 & 23). At the 341 meeting of the creditors, it was determined that the Debtor had to file certain amendments to the Schedules and Statement of Financial Affairs, which included the following; (a) list Banco Popular de Puerto Rico as a creditor on Schedule D or F in relation to a mortgage lien over a certain real property in Plaza Athenee (presently registered under Mrs. Diaz's name), in relation to which Debtor is a co-debtor; (b) indicate on Schedule F the amount of the claim regarding Margarita Diaz Rivera;

and (c) list on Schedule H ex- spouse Margarita Diaz Rivera as a co-debtor regarding the mortgage lien over a certain real property at Plaza Athenee in which Banco Popular de Puerto Rico is the mortgage creditor (Docket No. 23). On July 24, 2012, the Debtor filed a motion to amend various Schedules and the Statement of Financial Affairs (Docket No. 26). Schedule G- Executory Contracts and Unexpired Leases- was amended to include Margarita Diaz Rivera as a party to the executory contract in the nature of a liquidation of conjugal partnership and his intention to reject the same. Schedule H-Codebtors- was amended to include Margarita Diaz Rivera as codebtor of creditor Banco Popular de Puerto Rico.

On August 23, 2012, the Creditor filed proof of claim #13-1 in the amount of $215,141.23 classifying the same in its entirety as a domestic support obligation under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). The court notes that included in the supporting documents for proof of claim #13-1 is a mortgage payoff statement dated June 26, 2012 from Banco Popular-Mortgage Servicing which details that the payoff balance for the mortgage is $213,141.23.

On August 23, 2012, the Creditor filed the motion to dismiss the case pursuant to 11 U.S.C. 1112(b)(4)(P), that is, for "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition" (Docket No. 33). On September 17, 2012, the Debtor filed his Reply to Mrs. Diaz's motion to dismiss alleging that the only amount that falls under the scope of support, and is thus considered a domestic support obligation, is the $3,000 monthly payment that the Debtor has paid pre-petition and post-petition to Creditor in conformity with the Divorce Petition. The Debtor further alleges that all other payments are part of an executory contract between his ex-spouse and himself and that he has rejected the same (Docket No. 55). On October 1, 2012, the Debtor filed his Memorandum of Law in Support of His Opposition to Mrs. Diaz's Motion to Dismiss arguing that; (i) the "family relations exception to federal jurisdiction" does not apply in the instant case because this term is associated to "grants of divorce, alimony and child custody decrees;" (ii) the Debtor has not requested the court to modify or to pass upon the reasonability of the state court determinations regarding alimony, rather this court has been requested to determine what amounts the state court intended as alimony at the time of the divorce, which is within the jurisdiction of this court; and (iii) that the only payment which qualifies as a domestic

support obligation in conformity with 11 U.S.C. §101(14A) is the $3,000 monthly payment for alimony; (iv) pursuant to the language of section IV (titled Ex-Spouse Alimony and Other Matters) of the Divorce Petition, the life insurance policy was not contemplated as part of the alimony, but rather the disability insurance policy is the only policy related to the $3,000 alimony payments; (v) the $2,000 monthly payment forms part of the liquidation of conjugal assets as stated in the Divorce Petition and the same is included in section VII of the Divorce Petition titled "Liquidation and Division of Property" and the Appellate Court of Puerto Rico, Bayamón Section, in case Num. KLCE 2010-00500, established that the $2,000 monthly payment was not alimony but a monthly rent (translated as an "annuity") for the liquidation of the conjugal assets; (vi) Debtor's obligation to pay the mortgage of Mrs. Diaz's apartment was part of the liquidation and division of the conjugal partnership assets and as such was included in section VII of the Divorce Petition which is titled "Liquidation and Division of Property;" and (vii) the $800,000 life insurance policy is not part of the alimony in the Divorce Petition because alimony ceases with the death of the debtor and the proceeds of life insurance are triggered by the death of the debtor. The Debtor, upon further analysis, has concluded that the disability life insurance policy was tied to the $3,000 alimony payments and is able to present evidence to this court that the policy is currently active (Docket No. 65).

On October 16, 2012, Mrs. Diaz filed her Verified Reply to Debtor's Memorandum of Law pleading that; (i) all of the obligations included in the Divorce Petition are domestic support obligations pursuant to 11 U.S.C. §101(14A). Mrs. Diaz's contends that Debtor's obligations under the Divorce Petition are the following: (a) the $3,000 monthly payment; (b) the life insurance policy of $800,000 naming Mrs. Diaz as the sole beneficiary; (c) the disability insurance policy naming Mrs. Diaz as the sole beneficiary of at least a $3,500 monthly payment; (d) the mortgage payments of the property located at Condominio Plaza Athenee, which is Mrs. Diaz's residence, for a period of 120 months until May 2013, at which time Debtor has to pay the outstanding balance of the mortgage in full; and (e) and additional monthly payment of $2,000; (ii) due to Debtor's default in his domestic support obligations, Mrs. Diaz filed a motion in state court for an Order directing Debtor to pay all his domestic support obligations and the state court rendered an "...[O]rder granting the same, wherein it is specifically decided that the aforementioned obligations are non-dischargeable domestic support

obligations that Debtor must continue to pay post-petition;" (iii) the family relation exception to federal jurisdiction applies "...not only to requests for divorce, alimony, or child custody decrees as Debtor affirms, but to all 'claims that are closely related to, though not within, the jurisdictional exception'" citing Sutter v. Pitts, 639 F. 2d 842 (1st Cir. 1981); (iv) "... it must be clarified that the holding of [Smith v. Pritchett (In re Smith), 586 F. 3d 69 (1st Cir. 2009)] is not that a Bankruptcy Court can determine what is the alimony intended by the state court, but that a Bankruptcy Court can determine which payments constitute a domestic support obligation under the Bankruptcy Code;" (v) Mrs. Diaz relinquished her interest in valuable assets in exchange for the monetary obligations given in the divorce decree that were needed for her upkeep; (vi) "...regardless of the labeling of the monetary obligations given in the divorce decree, the fact is that all of said monetary obligations were and are necessary for the appearing party to cover her needs;" and (vii) "as to the life insurance, this is the most clear example that the payments contemplated in the divorce decree are domestic support obligations insofar as a life insurance was established in order to provide the appearing creditor with the necessary funds for her upkeep upon Debtor's demise" (Docket No. 71).

Both parties agree that the $3,000 monthly alimony payment, the health insurance coverage for Mrs. Diaz and the disability insurance policy naming Mrs. Diaz as the sole beneficiary constitute domestic support obligations under 11 U.S.C. §101(14A). The issue before the court is to determine whether the remaining obligations included in the state court Divorce Petition pursuant to a settlement agreement between Debtor and Mrs. Diaz are domestic support obligations pursuant to 11 U.S.C. §101(14A) or whether the same constitute a property settlement.

Domestic support obligations are entitled to priority treatment pursuant to 11 U.S.C. §507(a)(1)(A) whereas claims from a property settlement are general unsecured claims. The obligations in controversy are the following; (i) the additional monthly payment of $2,000; (ii) the mortgage payments of the property located at Condominio Plaza Athenee, which is Mrs. Diaz's residence, for a period of 120 months until May 2013, at which time Debtor has to pay the outstanding balance of the mortgage in full; and (iii) the life insurance policy of $800,000 naming Mrs. Diaz as the sole beneficiary.

Applicable Law and Analysis

*Domestic Relations Exception*

At the outset, the court concludes that the domestic relations exception does not apply to the issue before the court as the exception "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." Mooney v. Mooney, 471 F.3d. 246, 248 (1st Cir. 2006), citing Ankenbrandt v. Richards, 504 U.S. 689 (1992) and Marshall v. Marshall, 547 U.S. 293 (2006). State law controls the determination of the duty to support, but federal law determines whether the duty or agreement is nondischargeable. William L. Nortion, Jr., 3 Norton Bankr. L. & Prac. 3d §57.30 (2013). This court is only concerned with determining if the debts constitute a domestic support obligation within the meaning of the Bankruptcy Code, 11 U.S.C. §101(14A); and if the same constitute cause to dismiss the petition pursuant 11 U.S.C. §1112(b)(4)(P). Therefore, the domestic relations exception does not apply as the pending issues are controlled by the Bankruptcy Code.

*Cause for Conversion or Dismissal pursuant 11 U.S.C. §1112(b)(4)*

Section 1112(b) of the Bankruptcy Code mandates the bankruptcy court, after notice and a hearing, to convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause and the case is devoid of unusual circumstances pursuant to 11 U.S.C. §1112(b)(2). 11 U.S.C. §1112(b)(1). The initial burden is on the movant to argue and present evidence by a preponderance of the evidence standard to prove its position that there is cause for either conversion or dismissal of the chapter 11 case, whichever is in the best interests of creditors and the estate. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[4] (16th ed. 2012). "Thus, until the movant carries the burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative." Id. However, after finding cause, the court has broad discretion to determine whether conversion or dismissal is in the best interest of creditors and the estate. See Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), 2008 Bankr. Lexis 3968 (B.A.P. 1st Cir. 2008). Section 1112(b)(4) of the Bankruptcy Code fails to define what the term "cause" means but provides a laundry list of circumstances which constitute "cause" for conversion or dismissal. This list of causes is nonexhaustive, thus a case may be converted or dismissed for other causes. See AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re

5

AmeriCERT, Inc.), 360 B.R. 398, 401 (Bankr. D. N.H. 2007).

Section 1112(b)(4)(P) specifically establishes that cause to dismiss or convert a chapter 11 case includes, "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." 11 U.S.C. §1112(b)(4)(P).

*What is a Domestic Support Obligation?*

The term "domestic support obligation" is defined in Section 101(14A) as;

"...a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is–
(A) owed to or recoverable by–
(i) a spouse, a former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
(ii) a governmental unit;
(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of–
(i) a separation agreement, divorce decree, or property settlement agreement;
(ii) an order of a court of record; or
(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt." 11 U.S.C. §101(14A).

For an obligation to a former spouse to be considered a domestic support obligation, it must actually be in the nature of support, meaning that what is given must be to provide for the upkeep of the recipient spouse and children. See Smith v. Pritchett (In re Smith), 586 F. 3d 69, 73-74 (1st Cir. 2009); Werthen v. Werthen (In re Werthen), 329 F. 3d 269, 273 (1st Cir. 2003). The issue of whether certain types of obligations qualify as support or as part of a property settlement within the meaning of the Bankruptcy Code is one within the province of federal bankruptcy law, not of state law. In re Smith at 73; 1-6 Collier Family Law and the Bankruptcy Code ¶6.03[1] and [2] ("...the legislative history of the Bankruptcy Code definitively resolved the issue of whether federal law or state family law determines whether a particular obligation is in the nature of alimony, maintenance or support, and therefore a nondischargeable domestic support obligation. The resolution of that question must be based upon principles of federal law"). The labels used for obligations by the state court or the

parties are not necessarily controlling for Bankruptcy Code purposes. See In re Werthen at 273; 1-6 Collier Family Law and the Bankruptcy Code ¶6.03[2]("Thus, the fact that state law characterizes a particular obligation as support or property settlement is not binding on the bankruptcy court"). Even though state law is not controlling, a bankruptcy court should look to state law for guidance in determining whether a particular obligation is in the nature of support or a property settlement, "since virtually the whole subject matter of familial support is within the domain of state law, and 'there is no federal law of domestic relations,' a federal court must look to many of the same considerations that are found in state law." 1-6 Collier Family Law and the Bankruptcy Code ¶6.03[2]. Determining whether a particular obligation is in the nature of support or a property settlement is often a difficult decision for various reasons; namely; (i) parties entering into separation agreements generally do not consider how their obligations will be characterized in a bankruptcy case; (ii) if the obligations are mandated by a state court order the same is based on state family law statutes and doctrines; (iii) the state law to which the bankruptcy court turns for guidance, usually recognizes that the issues of support and property division are inextricably intertwined; and (iv) the laws governing support and division of property consider many of the same factors which focus on the financial resources and needs of the parties. Id. at ¶6.04[1].

The critical issue in determining whether a claim is in the nature of support is, "whether the state court which entered the divorce decree and the parties who entered into a divorce agreement intended the award to serve as support or as 'something else,' such as a division of jointly owned property." Smith v. Pritchett (In re Smith), 398 B. R. 715, 721 (B.A.P. 1st Cir. 2008), aff'd, 586 F. 3d 69 (1st Cir. 2009); Cowell v. Hale (In re Hale), 289 B.R. 788, 791 (B.A.P. 1st Cir. 2003); Soforenko v. Soforenko (In re Soforenko), 203 B.R. 853, 859 (Bankr. D. Mass. 1997)("Whether a debt constitutes support or a property settlement is determined by the intent either of the parties at the time of the settlement agreement, or in the absence of an agreement, by the intent of the state court at the time the order was issue"). In re Yeates, 807 F. 2d 874, 878 (10th Cir. 1986)("Rather, the initial inquiry must be to ascertain the intention of the parties at the time they entered the stipulation or property settlement agreement"). "A written agreement between the parties is persuasive evidence of intent." In re Yeates at 878 citing Tilley v. Jessee, 789 F. 2d 1074, 1077 (4th Cir. 1986). Moreover,

"...if the agreement between the parties clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control. In the case of a written agreement, it must also be considered whether the parties in the agreement bilaterally intended the obligations in controversy to constitute support. See In re Hale, 289 B.R. at 791, fn. 4 ("The §523(a)(5) inquiry goes to whether the parties to the agreement establishing the obligation in question bilaterally intended it to function as support (or whether the court imposing judgment did)"). However, if the agreement is ambiguous, then the court must determine the parties' intentions by looking to extrinsic evidence." In re Yeates at 878. The First Circuit in In re Smith stated that it "has not adopted a specific multi-factor test used to discern intent when determining whether an obligation is in the nature of support" but rather focusing on the totality of the circumstances of a particular case. In re Smith at 74. In In re Soforenko, the Court adopted the principal indicators used to discern intent by the Third Circuit in Gianakas v. Gianakas (In re Gianakas), 917 F. 2d 759, 762-763; namely; (i) the language and substance of the state court's order; (ii) the parties' financial circumstances at the time of the order; and (iii) the function served by the obligation at the time of the order. See In re Soforenko, 203 B.R. 853, 859.

After setting forth the applicable law to determine if a debt is in the nature of support, the court proceeds to examine the parties' contentions.

<u>The Agreement</u>

In the instant case, the Debtor and Mrs. Diaz were married under the conjugal partnership regime until May 15, 2003, when a Judgment was rendered in the Superior Court of the Commonwealth of Puerto Rico, Bayamon Section, in case Num. DDI2002-3422, granting the divorce petition by mutual consent and approving the stipulations submitted by the parties with respect to custody, parental rights, alimony, and conjugal assets (Docket No. 33-2). The Divorce Judgment details that during the marriage of the Debtor and Mrs. Diaz they had two daughters, who at the time of the Divorce Judgment were 20 and 23 years old. The Debtor and Mrs. Diaz submitted to the state court a comprehensive agreement regarding parental rights (patria potestas), custody, paternal-filial relationship, support, and the division and liquidation of the conjugal partnership. The Debtor and Mrs. Diaz were represented by counsel during the divorce proceedings. The agreement is divided in

ten (10) sections which consist of the following; (I) Nature of the Present Stipulation; (II) Patria Potestas, Custody and Paternal-Filial Relationship; (III) Child Support ("Pension Alimentaria"); (IV) Alimony and Other Matters; (V) Conjugal Assets and Obligations; (VI) Debts; (VII) Liquidation and Division of Assets; (VIII) Other Agreements and Matters; (IX) Lecture and Acceptance; and (X) Prayer. The obligations in controversy are included in sections IV- Alimony and Other Matters and VII- Liquidation and Division of Assets.

*Additional $2,000 Monthly Payment*

The additional $2,000 monthly payment is included under Section VII titled, Liquidation and Division of Assets of the settlement agreement. The first paragraph under this section establishes that after extensive negotiations between the parties and a thorough analysis by their respective consultants they have settled the liquidation and division of all the assets of the conjugal partnership in the manner described in the agreement. The last paragraph of said section states that as an integral part of this agreement, and in addition to the alimony included in section IV, the petitioner (Mr. Melendez) agrees to pay to the petitioner (Mrs. Diaz) a $2,000 monthly payment in concept of the liquidation in installments of the rights and/or assets of the petitioner in the conjugal partnership (Docket No. 33-1, pgs. 9 & 11).

Prior to the filing of the instant case the Debtor prayed the Superior Court of Puerto Rico to release him from the $2,000 monthly obligation. On June 15, 2010, the Appellate Court of the Commonwealth of Puerto Rico, Bayamón Section, ("Appellate Court") rendered a Judgment confirming the state court's decision denying Debtor to be released from the obligation of having to make the $2,000 monthly payment in concept of the liquidation and division of the assets of the conjugal partnership. The Appellate Court reasoned that the juridical figure of the life annuity ("renta vitalicia") pursuant to Article 1702 of the Puerto Rico Civil Code, 31 L.P.R.A. §4791[1], in any of its modalities, gives the person the right to receive a fixed quantity of monies or fungible things in

---

[1] Article 1702 of the Puerto Rico Civil Code provides: "[a]n aleatory contract of annuity binds the debtor to pay a pension or annual income to one or more specified persons for life, for a principal in personal or real property, the ownership of which is at once transferred to said debtor charged with the income." 31 L.P.R.A. §4791.

equally fixed time periods, and is distinct from alimony because alimony (support) is subject to the needs and the resources of the parties involved in these types of relationships. (Docket No. 65-3, pg. 15). The Appellate Court further explained that in the instant case, the Debtor retained the income producing assets of the conjugal partnership, which justifies the fact that he assumed the support obligation of Mrs. Diaz, as well as ensuring her participation in the returns of the income generating assets. The income generating assets remained under the Debtor's exclusive control and possession in conformity with the agreed upon stipulations in the Divorce Petition. The Appellate Court concluded that there was an effective liquidation of the assets of the conjugal partnership subject to an agreed upon life annuity, and that, in effect, Mrs. Diaz relinquished the distribution of the assets in the conjugal partnership in exchange for a life annuity in conformity with Article 1702 of the Puerto Rico Civil Code, 31 L.P.R.A. §4791. (Docket No. 65-3, pg. 25). The Appellate Court also stated that the juridical figure of the life annuity does not have the characteristics of a support obligation because it does not depend upon the necessities of the person needing the support or the capital that is subject to the same. (Docket No. 65-3, pg. 26).

The court finds that the language and the substance of the divorce agreement clearly establish the intent of the parties regarding this particular obligation, as the agreement contains an express provision that provides, that in addition to the alimony included in section IV of the agreement, the petitioner (Mr. Melendez) has agreed to a $2,000 monthly payment for the liquidation in installments of the assets and rights of Mrs. Diaz pertaining to the conjugal partnership (Docket No. 33-1, pg. 11). Moreover, the Appellate Court held that the life annuity which stemmed from the divorce stipulations was for the effective liquidation of the assets of the conjugal partnership. Therefore, the court concludes that the $2,000 monthly payment obligation constitutes part of a property settlement as expressly provided in the stipulations which formed part of the divorce Judgment. Consequently, the $2,000 monthly payment is not a support obligation of the Debtor.

*Mortgage Payment of Mrs. Diaz's residence*

The obligation to make the payments on the mortgage for the property located at Condominio Plaza Athenee, which is Mrs. Diaz's residence, is included under section VII titled, Liquidation and Division of Assets, which forms part of the settlement agreement. Section V of the settlement

agreement, titled Partnership Assets and Obligations, lists and describes the real property which belongs to the conjugal partnership and the personal property ("bienes muebles o de otra naturaleza") and property of a different nature that belongs to the conjugal partnership. Section VI of the settlement agreement is titled Debts and details the debts of the conjugal partnership. The first paragraph under section VII establishes that after extensive negotiations between the parties and a thorough analysis by their respective consultants they have settled the liquidation and division of all the assets of the conjugal partnership in the manner described in the agreement. The second paragraph under section VII establishes that Natmar, Inc. duly transferred to Mrs. Diaz the real property at the Condominio Plaza Athenee and the petitioner (Mr. Melendez) will assume the totality of the mortgage liens that affect this real property and will pay the same on or before the thirty (30) day period in which the Divorce Judgment becomes final and unappealable, except that as to the mortgage lien which is guaranteed by the mortgage note issued on behalf of Popular Mortgage, Mr. Melendez agreed to complete the mortgage payments for this particular real property on or before 120 months from the date of the divorce hearing.  Moreover, Mr. Melendez agreed to release Mrs. Diaz from all the mortgage debts which affect this particular real property and to perform all the necessary arrangements to release Mrs. Diaz as a mortgage debtor for this particular property.

The obligation to complete the mortgage payments for the property located at the Condominio Plaza Athenee forms part of a liquidation and division of marital property agreement, as expressly provided in section VII of said agreement. The language and the substance of the divorce agreement clearly establish the parties' position regarding this particular obligation, that is, the obligation is part of the division of marital property.

Therefore, the court concludes that the structure, language and substance of the agreement are clear indicators of the parties' intentions with respect to the nature of these claims which formed part of the division and liquidation of the conjugal assets. See Tilley v. Jessee, 789 F 2d at 1078 (4th Cir. 1986) ("In this instance, the agreement did more than simply label payments as alimony or property settlement. It exhibited a structured drafting that purported to deal with separate issues in totally distinct segments of the document. Indeed, as one member of this panel observed at oral argument, if this agreement does not reveal an intent to separate alimony from a property settlement, it is

virtually impossible to envision a written agreement that could do so"). Because there is no ambiguity as to the nature of these particular obligations, thus, there is no need to examine extrinsic evidence. The mortgage payments are part of the division of marital property and are not in the nature of a support obligation.

*Life Insurance*

The obligation to maintain the life insurance policy in the amount of $800,000 in which the sole beneficiary is Mrs. Diaz is included under section IV titled, Alimony and Other Matters which forms part of the settlement agreement. The first paragraph of this section establishes that the petitioner, Mr. Melendez, will make monthly payments in the amount of $3,000 and that such payments will only cease in the event the petitioner Mrs. Diaz remarries or if there is an involuntary and substantial change in the financial situation and health of petitioner Mr. Melendez. The alimony may be also reduced by Mrs. Diaz's right to receive Social Security benefits at the age of sixty-five (65). The alimony may also cease in the event the disability insurance benefits come into effect. Mr. Melendez also agreed to provide Mrs. Diaz with health insurance that is comparable to the one she had at the time of the divorce proceedings (Docket No. 33-1, pg. 3). It is uncontested that these obligations constitute support.

However, the third paragraph under this section states that in other matters and as an essential component of this agreement, Mr. Melendez agrees to maintain a life insurance policy in the amount of $800,000, and Mrs. Diaz will be the only beneficiary of the same. In addition, Mr. Melendez agrees to maintain a disability insurance policy that guarantees monthly payments in the amount of $3,500 in which Mrs. Diaz will be the only beneficiary of said policy. The Debtor argues that the $800,000 life insurance policy is not part of the alimony included in the stipulations of the Divorce Petition because alimony ceases with the death of the Debtor and the proceeds of the life insurance are triggered by the death of the Debtor. Mrs. Diaz argues that the life insurance policy is a support obligation because it was established to provide her with the necessary funds for her upkeep upon Debtor's demise.

Although the life insurance policy is included under section IV titled, Alimony and Other Matters, the language and the substance included in this particular section do not establish clearly that

the parties' intent regarding the life insurance policy was part of the support (alimony) Mr. Melendez agreed to provide to Mrs. Diaz in the event he passed away. The labels used for obligations by the state court or the parties do not necessarily control whether an obligation is in the nature of support for Bankruptcy Code purposes. See In re Werthen at 273. Thus, an evidentiary hearing is necessary to provide the court with extrinsic evidence that demonstrates the intent of the parties at the time of the divorce proceedings with respect to the life insurance policy in which Mrs. Diaz is the only beneficiary. Mrs. Diaz has the initial burden to establish that such obligation was intended to be in the nature of support.

*Post-petition Motion and State Court Order*

Mrs. Diaz also presented the argument that due to Debtor's default in his domestic support obligations she had to file in state court a motion requesting an Order directing the Debtor to pay all domestic support obligations, and the state court rendered an Order granting the same, wherein it is specifically decided that the obligations are non-dischargeable domestic support obligations that the Debtor must continue to pay post-petition (Docket No. 71, pgs. 2-3). The prayer pertaining to this particular motion requested the state court to order attorney Melendez to comply with each and every one of the obligations included in the Divorce Petition and Judgment since the same are not dischargeable under the Bankruptcy Code and form part of valid order of domestic obligations (Docket No. 33-3, pgs. 4-5). However, no particular section of the Bankruptcy Code was referenced in the prayer of said motion. The state court granted this motion ("Con Lugar"). The state court ordered Mr. Melendez to comply with the payments associated with the obligations included as part of the stipulations of the Divorce Judgment.

The stipulations in the Divorce Petition included both domestic support obligations and property settlement debts in connection with a separation agreement, which are not dischargeable debts in an individual Chapter 11 case pursuant to 11 U.S.C. §§523(a)(5), 523(a)(15) and 1141(d)(2). Debts that are in the nature of alimony, maintenance or support, and property settlement debts are non-dischargeable in an individual Chapter 11 case. The state court did not adjudicate whether the various obligations contained in the stipulations were domestic support obligations under 11 U.S.C. §101(14A) and, arguably it may not, as determining if an obligation qualifies as support is a matter

13

of federal bankruptcy law, not state law. Therefore, the state court decision does not have effect on the matters before the court.

*Property Settlement in Connection with a Divorce as Executory Contract*

The Debtor argues that the obligations in controversy are part of an executory contract in the nature of a liquidation of the conjugal partnership and has rejected the same as it appears from amended Schedule G-Executory Contracts and Unexpired Leases (Docket No. 26). However, the Debtor fails to substantiate his position under Sections 523(a)(15) and 1141(d)(2), which specifically provide that an individual debtor in Chapter 11 is not discharged from debts stemming from a property settlement in connection with a divorce proceeding. Property settlements are only dischargeable in a Chapter 13 case after completion of all plan payments. 11 U.S.C. §1328(a)(2). In any event, the Debtor has not moved the court requesting the rejection of the executory contract nor has included such a provision in a Chapter 11 plan, as one has not been filed. Therefore, there has been no rejection of an executory contract concerning the division of the conjugal partnership, assuming one does exist. See Tenucp Prop. LLC v. Riley (In re GCP CT Sch. Acquisition, LLC), 429 B.R. 817, 827-828 (B.A.P. 1st Cir. 2010).

Conclusion

In view of the foregoing, the court orders as follows:

(1) It is uncontested that the $3,000 monthly payment, the health insurance coverage for Mrs. Diaz, and the disability insurance policy naming Mrs. Diaz as the sole beneficiary constitute domestic support obligations under 11 U.S.C. §101(14A). Thus, the same must be currently paid.

(2) The additional $2,000 monthly payment and the mortgage payment of Mrs. Diaz's residence are not domestic support obligations under 11 U.S.C. §101(14A), but rather form part of the liquidation and division of conjugal assets property settlement agreed upon by the parties during their divorce proceedings.

(3) The court will hold an evidentiary hearing regarding the life insurance policy obligation to determine the intent of the parties at the time of the divorce proceedings and thus, determine whether the same constitutes a domestic support obligation or forms part of the

14

property settlement. An evidentiary hearing is scheduled for May 29, 2013 at 9:30am. Ten (10) days prior to the hearing the parties shall file proposed findings of fact and conclusions of law. Each finding of fact shall refer to one of the following; a stipulated uncontested fact; a document identified as an exhibit; or a witness's testimony.

SO ORDERED.

In San Juan, Puerto Rico, this 11th day of March, 2013.

Enrique S. Lamoutte
United States Bankruptcy Judge