IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 12-03808(ESL)

ERNESTO A. MELENDEZ PEREZ                       CHAPTER 11

    Debtor

OPINION AND ORDER

This case is before the court upon Margarita Diaz Rivera's (hereinafter referred to as "Ms. Diaz" or the "Creditor") *Motion to Dismiss* the case pursuant to 11 U.S.C. §1112(b)(4)(P), that is, for "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition," and the opposition thereto by Ernesto Antonio Melendez Perez (hereinafter referred to as the "Debtor" or "Mr. Melendez"). On March 11, 2013, the court entered an *Opinion and Order* (Docket No. 97) denying the motion to dismiss as to the obligations to pay the $2,000 per month and the mortgage payments. The court determined that the same did not constitute domestic support obligations pursuant to 11 U.S.C. §101(14A), but rather formed part of the liquidation and division of conjugal assets property settlement. The court scheduled an evidentiary hearing regarding the life insurance policy obligation to determine the intent of the parties at the time of the divorce proceedings and thus, determine whether the same constitutes a domestic support obligation or forms part of the property settlement. The hearing was held on January 24, 2014. After considering the evidence, this court denies the *Motion to Dismiss* as it finds that the life insurance policy obligation is not a domestic support obligation.

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(B). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

-1-

Procedural Background

The March 12, 2013 *Opinion and Order* (Docket No. 97) includes a detailed procedural background of the instant case, thus the same will not be included herein. On March 12, 2013, this Court rendered its Opinion and Order in which it held the following:

"(1) It is uncontested that the $3,000 monthly payment, the health insurance coverage for Mrs. Diaz, and the disability insurance policy naming Mrs. Diaz as the sole beneficiary constitute domestic support obligations under 11 U.S.C. §101(14A). Thus, the same must be currently paid.

(2) The additional $2,000 monthly payment and the mortgage payment of Mrs. Diaz's residence are not domestic support obligations under 11 U.S.C §101(14A), but rather form part of the liquidation and division of conjugal assets property settlement agreed upon by the parties during their divorce proceedings.

(3) The court will hold an evidentiary hearing regarding the life insurance policy obligation to determine the intent of the parties at the time of the divorce proceedings and thus, determine whether the same constitutes a domestic support obligation or forms part of the property settlement." (Docket No. 97, pgs. 14-15). In re Melendez Perez, 2013 Bankr. Lexis 984, *30 (Bankr. D.P.R. 2013).

On September 23, 2013, the Debtor filed his *Motion Submitting Proposed Findings of Fact and Conclusions of Law* (Docket No. 144) regarding the nature of the life insurance policy based on the intent of the parties and argued the following: (i) section (IV) of the divorce agreement titled "Alimony and Other Matters" establishes the life insurance provision under "Other Matters" excluding the terms "pension" and "alimony" which are included in the first paragraph of Section IV; (ii) "[t]his clause was the process of extensive negotiations in which Debtor did not agree to consolidate the issues of alimony and life insurance. The agreement is clear and expresses the intent of the parties which is that life insurance was separated from alimony;" (iii) Ms. Diaz in paragraphs 5 and 6 of her *Reply to the Motion Requesting Reduction of Alimony* filed on November 24, 2009 before the Court of First Instance, Superior Court of Bayamón in case No. DDI 2002-3422, states that the life insurance

-2-

is not part of the alimony provision but rather it is included under other agreements; and (iv) Mrs. Diaz has never included as "income" from alimony the payments made by Debtor in her income tax return. She has only included the $3,000 monthly payments as income from alimony (Docket No. 144). On September 23, 2013, Mrs. Diaz filed her *Proposed Findings of Fact and Conclusions of Law* in which she argues the following: (i) the life insurance obligation is included in the same section of the divorce decree as the disability insurance policy obligation; and (ii) in the negotiations regarding the divorce decree, Mrs. Diaz relinquished her interest in the conjugal partnership's property at a discount in exchange of securing a monthly payment to cover her needs even if Debtor was unable to work, either through disability or death (Docket No. 145). On January 24, 2014 the evidentiary hearing was held (Docket No. 177). Mrs. Diaz and the Debtor testified as to the intent of the parties regarding the life insurance policy in which Mrs. Diaz was the sole beneficiary.

*January 24, 2014 Evidentiary Hearing*

*Mrs. Margarita Rosa Diaz Rivera Testimony*

Mrs. Diaz stated that she was married to Mr. Melendez for 31 years. Mrs. Diaz and Debtor divorced on May 15, 2003. She testified that the purpose of this hearing was to resolve the issue of the life insurance policy. Mrs. Diaz recognized Joint Exhibit I, the divorce decree, which contains the stipulations and agreements of the divorce. Mrs. Diaz read the fourth paragraph of Section IV titled "Alimony and Other Matters" which disclosed the agreement regarding the life insurance policy. Mrs. Diaz testified that both policies in the divorce petition were included to ensure the continuation of her sustenance. She testified that both policies go hand in hand and thus, were included in the same paragraph. The life insurance policy is not to enrich herself but to ensure the continuity of her sustenance that was dictated by the court. Mrs. Diaz testified that the disability insurance policy was in the event that Mr. Melendez became incapacitated and the same would substitute the $3,000 monthly alimony payment. Mrs. Diaz

explained that the life insurance policy would be triggered by Mr. Melendez's early demise and the same was to ensure the continuity of her sustenance. Mrs. Diaz thinks that the life insurance policy is no longer in place. Mrs. Diaz stated that the last sentence of the first paragraph of Section IV titled "Alimony and Other Matters" mentions the life insurance policy.

Mrs. Diaz further testified that the *Reply to the Motion Requesting Reduction of Alimony* (Exhibit #1) refers to the reduction in alimony that Mr. Melendez requested in the state court. This document was prepared by Mrs. Diaz's lawyer. Mrs. Diaz explained that the document which is dated November 24, 2009 was prepared by her lawyer and the same was given to her for her consent. Mrs. Diaz gave her consent for said motion. Paragraph 5 of the *Reply to the Motion Requesting Reduction of Alimony* states that the $3,000 monthly payment constitutes alimony and that the rest is included under other matters such as the insurance. Mrs. Diaz stated as to paragraph 5 of the state court motion that she is not a lawyer and that she has absolute confidence in her attorney.

Mrs. Diaz testified that before the filing of the divorce petition she did not incur in numerous negotiations with Mr. Melendez. She testified that probably several draft agreements were exchanged and discussed between the parties before the stipulation was filed in state court.

*Mr. Ernesto Antonio Melendez Perez Testimony*

Mr. Melendez stated that he is an attorney at law and notary public since 1969. Mr. Melendez testified that before the filing of the amended petition of divorce dated May 15, 2003 there were prior negotiations that lasted approximately one year. Mr. Melendez explained that the divorce petition and previous drafts of the same were prepared by attorney Rina Biaggi, which was Mrs. Diaz divorce attorney throughout the negotiations. Mr. Melendez stated that his understanding was that the alimony was included in the first paragraph of Section IV titled "Alimony and Other Matters" and that the life insurance policy was included in "other matters"

which is in the fourth paragraph of Section IV. Mr. Melendez explained that the life insurance policy was included in "other matters" contrary to the intention of attorney Biaggi who wanted to include the life insurance in the alimony provisions. Mr. Melendez further explained that it was their intention that the life insurance policy was included in "other matters" to completely separate it from the provisions that only concerned alimony. Mr. Melendez stated that he did not accept the life insurance policy to be part of alimony and thus, the same was included in "other matters."

Mr. Melendez testified that the alimony is subject to variations depending on certain circumstances while the life insurance policy was permanent. The negotiations process consisted in that they would receive certain proposals from attorney Biaggi and he would discuss the same with attorney Curet. He testified that Exhibit II consisted of a fax cover page faxed to him by attorney Curet which included a proposed "Transactional Agreement in Contemplation of Divorce." Mr. Melendez stated that the document is undated but that it was faxed to him on April 7, 2003 at 9:45 in the morning by attorney Curet. He stated that he made the annotations that are included on the left hand side of the proposed draft titled, "Transactional Agreement in Contemplation of Divorce." Mr. Melendez stated that paragraph 7 includes a monthly payment amount of $5,000 that would cover both alimony and for the division and liquidation of the assets of the conjugal partnership. He said that he was not in agreement with the first part of paragraph and thus it has a "no" on the margin. The second part of paragraph 7 stated that he has to maintain a health insurance plan similar to the one that was in effect at the time for the benefit of Mrs. Diaz. In addition, it stated that the appearing parties agree to guarantee the alimony with a life insurance policy in the amount of one million dollars in which Mrs. Diaz would be the beneficiary. Mr. Melendez stated that he did not accept this paragraph and thus, there is a "no" on the margin. He further stated that paragraph 7 included in the proposed draft titled, "Transactional Agreement in Contemplation of Divorce" is

-5-

completely different to paragraph 4 of Section IV of the divorce petition (Joint Exhibit I) because he did not accept the terms of paragraph 7 of the proposed draft titled, "Transactional Agreement in Contemplation of Divorce." Mr. Melendez testified that his intention was that the insurance would not be included as part of the alimony because it was a deal breaker in the negotiations.

Mr. Melendez testified that he agreed to a $5,000 monthly payment of which $3,000 would be allocated as the alimony payment and $2,000 monthly payment as the liquidation of conjugal assets as indicated in Section IV of the divorce petition. He also stated that he did agree to a life insurance policy in the amount of $800,000 not for $1,000,000. He stated that Section VII titled, "Liquidation and Division of Assets" of the divorce petition is related to the division of assets. Mr. Melendez testified that the $800,000 life insurance policy is no longer in effect and if the same were in effect he would have to pay around $7,000 a month for the insurance premium.

Applicable Law and Analysis

This court in its prior Opinion and Order (Docket No. 97, pgs. 5-8) included the applicable law which has to be applied to determine whether the life insurance policy obligation is in the nature of a domestic support obligation pursuant to Section 101(14A). The applicable law is the following:

> "*Domestic Relations Exception*
> At the outset, the court concludes that the domestic relations exception does not apply to the issue before the court as the exception "encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." Mooney v. Mooney, 471 F. 3d. 246, 248 (1st Cir. 2006), citing Ankenbrandt v. Richards, 504 U.S. 689, 112 S. Ct. 2206, 119 L. Ed. 2d 468 (1992) and Marshall v. Marshall, 547 U.S. 293, 126 S. Ct. 1735, 164 L. Ed. 2d 480 (2006). State law controls the determination of the duty to support, but federal law determines whether the duty or agreement is nondischargeable. William L. Norton, Jr., 3 Norton Bankr. L. & Prac. 3d §57.30 (2013). This court is only concerned with determining if the debts constitute a domestic support obligation within the meaning of the

-6-

Bankruptcy Code, 11 U.S.C. §101(14A); and if the same constitute cause to dismiss the petition pursuant 11 U.S.C. §1112(b)(4)(P). Therefore, the domestic relations exception does not apply as the pending issues are controlled by the Bankruptcy Code

*Cause for Conversion or Dismissal pursuant 11 U.S.C. §1112(b)(4)*

Section 1112(b) of the Bankruptcy Code mandates the bankruptcy court, after notice and a hearing, to convert or dismiss a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes cause and the case is devoid of unusual circumstances pursuant to 11 U.S.C. §1112(b)(2). 11 U.S.C. §1112(b)(1). The initial burden is on the movant to argue and present evidence by a preponderance of the evidence standard to prove its position that there is cause for either conversion or dismissal of the chapter 11 case, whichever is in the best interests of creditors and the estate. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶1112.04[4] (16th ed. 2012). "Thus, until the movant carries the burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative." Id. However, after finding cause, the court has broad discretion to determine whether conversion or dismissal is in the best interest of creditors and the estate. See Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), 2008 Bankr. Lexis 3968 (B.A.P. 1st Cir. 2008). Section 1112(b)(4) of the Bankruptcy Code fails to define what the term "cause" means but provides a laundry list of circumstances which constitute "cause" for conversion or dismissal. This list of causes is nonexhaustive, thus a case may be converted or dismissed for other causes. See AmeriCERT, Inc. v. Straight Through Processing, Inc. (In re AmeriCERT, Inc.), 360 B.R. 398, 401 (Bankr. D. N.H. 2007).

Section 1112(b)(4)(P) specifically establishes that cause to dismiss or convert a chapter 11 case includes, "failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." 11 U.S.C. §1112(b)(4)(P).

*What is a Domestic Support Obligation?*
The term "domestic support obligation" is defined in Section 101(14A) as;

> "...a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—
    (i) a spouse, a former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
    (ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
(i) a separation agreement, divorce decree, or property settlement agreement;
(ii) an order of a court of record; or
(iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt." 11 U.S.C. §101(14A).

For an obligation to a former spouse to be considered a domestic support obligation, it must actually be in the nature of support, meaning that what is given must be to provide for the upkeep of the recipient spouse and children. See Smith v. Pritchett (In re Smith), 586 F. 3d 69, 73-74 (1st Cir. 2009); Werthen v. Werthen (In re Werthen), 329 F. 3d 269, 273 (1st Cir. 2003). The issue of whether certain types of obligations qualify as support or as part of a property settlement within the meaning of the Bankruptcy Code is one within the province of federal bankruptcy law, not of state law. In re Smith at 73; 1-6 Collier Family Law and the Bankruptcy Code ¶6.03[1] and [2] ("...the legislative history of the Bankruptcy Code definitively resolved the issue of whether federal law or state family law determines whether a particular obligation is in the nature of alimony, maintenance or support, and therefore a nondischargeable domestic support obligation. The resolution of that question must be based upon principles of federal law"). The labels used for obligations by the state court or the parties are not necessarily controlling for Bankruptcy Code purposes. See In re Werthen at 273; 1-6 Collier Family Law and the Bankruptcy Code ¶6.03[2] ("Thus, the fact that state law characterizes a particular obligation as support or property settlement is not binding on

the bankruptcy court"). Even though state law is not controlling, a bankruptcy court should look to state law for guidance in determining whether a particular obligation is in the nature of support or a property settlement, "since virtually the whole subject matter of familial support is within the domain of state law, and 'there is no federal law of domestic relations,' a federal court must look to many of the same considerations that are found in state law." 1-6 Collier Family Law and the Bankruptcy Code ¶6.03[2]. Determining whether a particular obligation is in the nature of support or a property settlement is often a difficult decision for various reasons; namely; (i) parties entering into separation agreements generally do not consider how their obligations will be characterized in a bankruptcy case; (ii) if the obligations are mandated by a state court order the same is based on state family law statutes and doctrines; (iii) the state law to which the bankruptcy court turns for guidance, usually recognizes that the issues of support and property division are inextricably intertwined; and (iv) the laws governing support and division of property consider many of the same factors which focus on the financial resources and needs of the parties. Id. at ¶6.04[1].

The critical issue in determining whether a claim is in the nature of support is, "whether the state court which entered the divorce decree and the parties who entered into a divorce agreement intended the award to serve as support or as 'something else,' such as a division of jointly owned property." Smith v. Pritchett (In re Smith), 398 B.R. 715, 721 (B.A.P. 1st Cir. 2008), aff'd, 586 F. 3d 69 (1st Cir. 2009); Cowell v. Hale (In re Hale), 289 B.R. 788, 791 (B.A.P. 1st Cir. 2003); Soforenko v. Soforenko (In re Soforenko), 203 B.R. 853, 859 (Bankr. D. Mass. 1997) ("Whether a debt constitutes support or a property settlement is determined by the intent either of the parties at the time of the settlement agreement, or in the absence of an agreement, by the intent of the state court at the time the order was issue"). In re Yeates, 807 F. 2d 874, 878 (10th Cir. 1986) ("Rather, the initial inquiry must be to ascertain the intention of the parties at the time they entered the stipulation or property settlement agreement"). "A written agreement between the parties is persuasive evidence of intent." In re Yeates at 878 citing Tilley v. Jesse, 789 F. 2d 1074, 1077 (4th Cir. 1986). Moreover, "...if the agreement between the parties clearly shows that the parties intended the debt to reflect either support or a property settlement, then that characterization will normally control. In the case of a written agreement, it must also be considered whether the parties in the agreement bilaterally intended the obligations in controversy to constitute support. See In re Hale, 289 B.R. at 791, fn. 4 ("The §523(a)(5) inquiry goes to whether the parties to the agreement establishing the obligation in question bilaterally intended it to function as support (or whether the court imposing judgment did)"). However, if the agreement is

ambiguous, then the court must determine the parties' intentions by looking to extrinsic evidence." <u>In re Yeates</u> at 878. The First Circuit in <u>In re Smith</u> stated that it "has not adopted a specific multi-factor test used to discern intent when determining whether an obligation is in the nature of support" but rather focusing on the totality of the circumstances of a particular case. <u>In re Smith</u> at 74. In <u>In re Soforenko</u>, the Court adopted the principal indicators used to discern intent by the Third Circuit in <u>Gianakas v. Gianakas</u> (<u>In re Gianakas</u>), 917 F. 2d 759, 762-763; namely; (i) the language and substance of the state court's order; (ii) the parties' financial circumstances at the time of the order; and (iii) the function served by the obligation at the time of the order. <u>See</u> <u>In re Soforenko</u>, 203 B.R. 853, 859." <u>In re Melendez Perez</u>, 2013 Bankr. Lexis 984, *10-18 (Bankr. D.P.R. 2013).

Thus, in order for Debtor's case to be dismissed or converted for failure to maintain the life insurance policy under 11 U.S.C. §1112(b)(4)(P), Mrs. Diaz must establish that (i) the obligation to maintain the life insurance policy is a domestic support obligation pursuant to 11 U.S.C. §101(14A) and (ii) that it is an "obligation that first becomes payable after the filing of the petition." 11 U.S.C. §1112(b)(4)(P).

The court in its prior Opinion and Order (Docket No. 97, pg. 8) stated the following regarding the divorce agreement between the parties:

"In the instant case, the Debtor and Mrs. Diaz were married under the conjugal partnership regime until May 15, 2003, when a Judgment was rendered in the Superior Court of the Commonwealth of Puerto Rico, Bayamon Section, in case Num. DDI2002-3422, granting the divorce petition by mutual consent and approving the stipulations submitted by the parties with respect to custody, parental rights, alimony, and conjugal assets (Docket No. 33-2). The Divorce Judgment details that during the marriage of the Debtor and Mrs. Diaz they had two daughters, who at the time of the Divorce Judgment were 20 and 23 years old. The Debtor and Mrs. Diaz submitted to the state court a comprehensive agreement regarding parental rights (patria potestas), custody, paternal-filial relationship, support, and the division and liquidation of the conjugal partnership. The Debtor and Mrs. Diaz were represented by counsel during the divorce proceedings. The agreement is divided in ten (10) sections which consist of the following; (I) Nature of the Present Stipulation; (II) Patria Potestas, Custody and Paternal-Filial Relationship; (III) Child

-10-

Support ("Pension Alimentaria"); (IV) Alimony and Other Matters; (V) Conjugal Assets and Obligations; (VI) Debts; (VII) Liquidation and Division of Assets; (VIII) Other Agreements and Matters; (IX) Lecture and Acceptance; and (X) Prayer." In re Melendez Perez, 2013 Bankr. Lexis 984, *17-18.

The life insurance policy obligation in controversy is included in section IV-Alimony and Other Matters of the divorce petition.  The court's analysis regarding the life insurance policy in its prior Opinion and Order (Docket No. 97, pgs. 12-13) stated as follows:

"The obligation to maintain the life insurance policy in the amount of $800,000 in which the sole beneficiary is Mrs. Diaz is included under section IV titled, Alimony and Other Matters which forms part of the settlement agreement. The first paragraph of this section establishes that the petitioner, Mr. Melendez, will make monthly payments in the amount of $3,000 and that such payments will only cease in the event the petitioner Mrs. Diaz remarries or if there is an involuntary and substantial change in the financial situation and health of petitioner Mr. Melendez. The alimony may be also reduced by Mrs. Diaz's right to receive Social Security benefits at the age of sixty-five (65). The alimony may also cease in the event the disability insurance benefits come into effect. Mr. Melendez also agreed to provide Mrs. Diaz with health insurance that is comparable to the one she had at the time of the divorce proceedings (Docket No. 33-1, pg. 3). It is uncontested that these obligations constitute support.

However, the [fourth] paragraph under this section states that in other matters and as an essential component of this agreement, Mr. Melendez agrees to maintain a life insurance policy in the amount of $800,000, and Mrs. Diaz will be the only beneficiary of the same. In addition, Mr. Melendez agrees to maintain a disability insurance policy that guarantees monthly payments in the amount of $3,500 in which Mrs. Diaz will be the only beneficiary of said policy. The Debtor argues that the $800,000 life insurance policy is not part of the alimony included in the stipulations of the Divorce Petition because alimony ceases with the death of the Debtor and the proceeds of the life insurance are triggered by the death of the Debtor. Mrs. Diaz argues that the life insurance policy is a support obligation because it was established to provide her with the necessary funds for her upkeep upon Debtor's demise.

Although the life insurance policy is included under section IV titled, Alimony and Other Matters, the language and the substance included in

-11-

this particular section do not establish clearly that the parties' intent regarding the life insurance policy was part of the support (alimony) Mr. Melendez agreed to provide to Mrs. Diaz in the event he passed away. The labels used for obligations by the state court or the parties do not necessarily control whether an obligation is in the nature of support for Bankruptcy Code purposes. See In re Werthen at 273. Thus, an evidentiary hearing is necessary to provide the court with extrinsic evidence that demonstrates the intent of the parties at the time of the divorce proceedings with respect to the life insurance policy in which Mrs. Diaz is the only beneficiary. Mrs. Diaz has the initial burden to establish that such obligation was intended to be in the nature of support." In re Melendez Perez, 2013 Bankr. Lexis 984, *25-27.

This court after considering the totality of the circumstances in this case finds that the life insurance policy obligation at the time of the divorce proceedings was not intended to be in the nature of support. Moreover, Mrs. Diaz through her attorney in state court filed a motion which was submitted by the as Exhibit I, *Reply to the Motion Requesting Reduction of Alimony,* which was filed on November 24, 2009 before the Court of First Instance, Superior Court of Bayamón in case No. DDI 2002-3422. Pargraph 5 of this motion states that it is their obligation to clarify that the only item which constitutes alimony is the $3,000 monthly payment and that the rest is included in other agreements; i.e. insurance. The court is aware that even though state law is not controlling to determine whether an obligation constitutes a domestic support obligation under 11 U.S.C. §101(14A), the bankruptcy court has the duty to look to state law for guidance in determining whether an obligation is in the nature of support or a property settlement. Article 149 of the Puerto Rico Civil Code provides: "[t]he obligation to give support ceases with the death of the person obliged to give it, even when given in the fulfillment of a final judgment. The right to receive support cannot be relinquished or transmitted to a third party. Neither shall such support be set off against any amount owing by the recipient to the person obliged to give it." 31 L.P.R.A. §568. Thus, pursuant to state law the obligation to provide support ceases with the death of the person obliged to give it. It does not commence with the death of the person obliged to provide support and for the same to be

-12-

received in a lump sum payment such as the proceeds of a life insurance policy in the event of the untimely death of the insured person. Thus, the Debtor's obligation to pay the alimony would cease upon his death, meaning that the life insurance policy cannot be interpreted as a guarantee for the alimony payments.

In the case of Perlis v. Perlis (In re Perlis), 467 B.R. 240 (Bankr. N.D. Ga. 2012), the court held that the debtor's obligation to pay the life insurance premiums that were due on the policy constituted a domestic support obligation pursuant to 11 U.S.C. §101(14A), given that the divorce decree required the debtor to maintain a life insurance policy for $1,000,000 to protect against the debtor deceasing before the child support payments were completed. However, the court also held that the case could not be dismissed or converted pursuant to 11 U.S.C. §1112(b)(4)(P) because the life insurance policy failed to satisfy the second requirement of Section 1112(b)(4)(P) which is that the, "obligation that first becomes payable after the filing of the petition." 11 U.S.C. §1112(b)(4). The life insurance policy designated in the divorce decree had lapsed. Thus, there were no monthly premiums that were due and payable post-petition on that life insurance policy, since it lapsed pre-petition. See In re Perlis, 467 B.R. at 245. The court in In re Perlis further stated that: "…[m]ovant is essentially asking the Court to dismiss Debtor's case because Debtor has not replaced the lapse policy; but replacing the life insurance policy is not an obligation that is payable." Id. at 245. In the instant case, Mr. Melendez testified that the life insurance policy is no longer in effect. However, even if the court were to find that the life insurance obligation constituted a domestic support obligation, the movant failed to establish that there were monthly premiums that were due and payable post-petition on that life insurance policy.

## Conclusion

For the reasons stated herein, the court finds that the obligation to maintain a life insurance policy in which Mrs. Diaz is the beneficiary does not constitute a domestic support

-13-

obligation under 11 U.S.C. §101(14A). Consequently, the Debtor's failure to maintain the life insurance policy under the divorce decree does not constitute a cause to dismiss or convert the case under 11 U.S.C. §1112(b)(4)(P).

SO ORDERED.

In San Juan, Puerto Rico, this 16th day of July, 2014.


Enrique S. Lamoutte
United States Bankruptcy Judge